**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re:<br>ALTA MESA RESOURCES, INC., *et al.*,<br>Debtors.[1] | §<br>§<br>§<br>§<br>§<br>§<br>§ | Chapter 11<br><br>Case No. 19-35133 (MI)<br><br>(Jointly Administered) |
| MUSTANG GAS PRODUCTS, LLC,<br><br>Plaintiff,<br>v.<br><br>OKLAHOMA ENERGY ACQUISITIONS, LP,<br>WELLS FARGO BANK, NATIONAL<br>ASSOCIATION, as Administrative Agent,<br>SIMONS PETROLEUM, LLC,<br>FIELDPOINT ENERGY SERVICES, LLC,<br>CATHEDRAL ENERGY SERVICES, INC.,<br>PANTHER DRILLING SYSTEMS LLC,<br>STEVENS TRUCKING CO.,<br>HAMILTON ENGINEERING, INC.,<br>TENARIS GLOBAL SERVICES (USA)<br>CORPORATION,<br>SUMMIT ESP, LLC,<br>HALLIBURTON ENERGY SERVICES, INC.,<br>TETRA TECHNOLOGIES, INC.,<br>BRONCO OILFIELD SERVICES, INC.,<br>FLOWCO PRODUCTION SOLUTIONS, LLC,<br>QES PRESSURE PUMPING, LLC,<br>RIG RUNNER, INC.,<br>COMPLETE ENERGY SERVICES, INC.,<br>BASIC ENERGY SERVICES, LP,<br>OIL PATCH GROUP, INC.,<br>U.S. SPECIALTY INSURANCE COMPANY,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Adv. Pro. No. 20-03114 |

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Alta Mesa Resources, Inc. (3840); Alta Mesa Holdings, LP (5150); Alta Mesa Holdings GP, LLC (0642); OEM GP, LLC (0958); Alta Mesa Finance Services Corp. (5673); Alta Mesa Services, LP (7295); Oklahoma Energy Acquisitions, LP (3762); SRII Opco GP, LLC (3729); SRII Opco, LP (5874); Kingfisher Midstream, LLC (1357); Kingfisher STACK Oil Pipeline, LLC (8858); Oklahoma Produced Water Solutions, LLC (0256); and Cimarron Express Pipeline, LLC (1545). The Debtors' mailing address is 15021 Katy Freeway, 4th Floor, Houston, Texas 77094.

### WELLS FARGO BANK, N.A.'S
### <u>MOTION TO DISMISS</u>

Wells Fargo Bank, N.A. ("Wells Fargo"), as Administrative Agent under the AMH Credit Agreement ("AMH Agreement"), files this Motion to Dismiss Mustang Gas Products, LLC's ("Mustang") Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b), for failure to state a claim upon which relief can be granted (the "Motion").

#### PRELIMINARY STATEMENT

1.      Mustang's assertion that its alleged covenant interests enjoy priority over Wells Fargo's security interests in the Debtors' assets—and therefore over the proceeds from the sale of those assets—ignores the priority order established by the Court's final cash collateral orders in these cases.  The Debtors' binding admissions in these orders that the Prepetition Secured Parties hold first priority security interests and liens preclude any claim that Mustang's alleged covenant interests have priority over Wells Fargo's interests in the proceeds of the sale.  At the time the first final cash collateral order was entered, Mustang had appeared in these cases and had been put on notice of the Debtors' intention to sell its assets free and clear of all interests.  Mustang nonetheless failed to contest the Debtors' admissions as to the seniority of the Prepetition Secured Parties' liens within the challenge period, barring its belated claims of priority brought in this adversary proceeding.

2.      In addition, Mustang's underlying legal position that its gas dedication covenants burdening land can be converted into a priority security interest in the proceeds of the Section 363 sale ignores fundamental legal principles distinguishing restrictive covenants, such as the gas dedication covenants purportedly held by Mustang, from mortgages and liens, such as the

mortgages and liens held by Wells Fargo.  Accepting Mustang's factual allegations as true, Mustang fails to state a claim for relief.

FACTUAL BACKGROUND

**I.      The Chapter 11 Cases**

3.      Debtors Oklahoma Energy Acquisitions, LP, Alta Mesa Resources, Inc., and Alta Mesa Holdings, LP (collectively, "OEA") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on September 11, 2019.  Wells Fargo is a creditor of OEA and the Administrative Agent under the AMH Agreement, the Debtors' prepetition revolving credit facility.

4.      Prior to the Petition Date, the lenders that were parties to the AMH Agreement (collectively with Wells Fargo, the issuers of letters of credit under the AMH Agreement, and the other Secured Parties as defined in the AMH Agreement, the "Prepetition Secured Parties") made certain loans and advances to Alta Mesa Holdings, LP, as Borrower (together with the Guarantors under the AMH Agreement, the "Prepetition Loan Parties").

5.      Mustang alleges it entered into, or is a successor-in-interest under, a number of gas purchase agreements that pertain to and govern the sale of gas from certain lands.  *See* Complaint ¶ 11.  Mustang further claims that these agreements contain gas dedication covenants that burden certain mineral interests which were later acquired by OEA (the "Purported Covenant Interests"). *See id.* ¶ 12.

6.      Mustang has been aware of these bankruptcy cases since at least September 20, 2019, *see* Dkt. 190 (Affidavits of Service for the Period from Sept. 16, 2019 through Sept. 22, 2019) at 26, 275, and has been participating in them since October 28, 2019, *see* Dkt. 421 (Motion for Modification of Automatic Stay to Continue Litigation Affecting Sale).  On December 9, 2019,

-3-

Mustang filed proofs of claim based on alleged breaches of the gas purchase agreements and related causes of action, admitting that its claims were unsecured.  *See* Claim Nos. 1022, 1037, 1063, 1081.  Notwithstanding that its claims were based on written contracts, Mustang failed to include copies of the alleged gas purchase agreements or any other supporting documentation with its proofs of claim, conceding that it "d[id] <u>not</u> have supporting documentation."  *See* Claim Nos. 1022, 1037, 1063, 1081 (emphasis in original); Fed. R. Bankr. P. 3001(c)(1) ("[W]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim.").

## II.    The Cash Collateral Orders

7.    On November 21, 2019, November 30, 2019, and February 25, 2020, respectively, the Court entered final, amended final, and second amended final orders approving the use of cash collateral.  *See* Dkt. 567 (the "Cash Collateral Order"); Dkt. 600 (the "Amended Cash Collateral Order"); Dkt. 1250 (the "Second Amended Cash Collateral Order" and, with the Cash Collateral Order and the Amended Cash Collateral Order, the "Cash Collateral Orders").[2]  The Cash Collateral Orders followed the entry of three interim cash collateral orders, dated September 12, 2019, October 11, 2019, and November 7, 2019, respectively.  *See* Dkt. 63; Dkt. 308; Dkt. 481.

8.    Among other things, the Cash Collateral Orders contained admissions and stipulations by the Debtors regarding the security interests and liens of the Prepetition Secured Parties, including that:

> the Prepetition Loan Parties and the Parent Pledgors, as applicable, granted senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens on, certain assets of the Prepetition Loan Parties and the Parent Pledgors, as applicable (as more specifically defined below, the "<u>Prepetition</u>

---

[2] Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Cash Collateral Orders and/or the Complaint.

Collateral") to and/or for the benefit of the Prepetition Secured Parties . . . , subject
only to Permitted Prior Liens.

Dkt. 567 ¶ D(i); Dkt. 600 ¶ D(i); Dkt. 1250 ¶ D(i).  Permitted Prior Liens, as defined in the Cash

Collateral Orders, do not include Mustang's Purported Covenant Interests.[3]

9.      The Cash Collateral Order and Amended Cash Collateral Order further provided

that the Debtors admissions "(i) shall be binding upon the Debtors for all purposes; and (ii) shall

be binding upon all other parties in interest . . . for all purposes," unless a party brings a Challenge

within prescribed time periods.  Dkt. 567 ¶ 21; Dkt. 600 ¶ 21.  These orders reiterated that, should

no Challenge be properly filed, "the Debtors' admissions and releases . . . shall be binding on all

parties in interest," and "shall not be subject to any other or further challenge by . . . any other

party in interest."  Dkt. 567 ¶ 21; Dkt. 600 ¶ 21.  The Cash Collateral Order and Amended Cash

Collateral Order were entered after a final hearing on November 21, 2019, notice of which was

provided in accordance with the Bankruptcy Rules and the Bankruptcy Code.  *See* Dkt. 567 at 2 &

¶ H ("No further notice of, or hearing on, the relief sought at the Final Hearing and the relief

granted herein is necessary or required."); Dkt. 600 at 2 & ¶ H.

10.      The Challenge Deadline for all parties other than the Committee for the Prepetition

Loan Parties was the latest of (i) sixty days from the Petition Date—November 10, 2019, (ii) a

date ordered for cause upon a motion filed before November 10, 2020, or (iii) a date agreed upon

by Wells Fargo.  Dkt. 567 ¶ 21; Dkt. 600 ¶ 21.  The November 10, 2020 deadline was established

in the initial interim cash collateral order, entered September 12, 2019.  *See* Dkt. 63 ¶ 22.  Mustang,

---

[3] Permitted Prior Liens are defined as "valid, perfected, unavoidable, and enforceable (i) prepetition liens (if any)
which are senior to the Prepetition Secured Parties' liens or security interests as of the Petition Date, (ii) prepetition
claims for set off and recoupment (if any) which are senior to the Prepetition Secured Parties' liens or security interests
as of the Petition Date, and (iii) liens in existence immediately prior to the Petition Date that are perfected subsequent
to the Petition Date . . . and that are senior to the Prepetition Secured Parties' liens or security interests as of the
Petition Date."  Dkt. 567 ¶ 3(a); Dkt. 600 ¶ 3(a); Dkt. 1250 ¶ 3(a).

which did not object to any of the interim cash collateral orders, the Cash Collateral Order, or the Amended Cash Collateral Order, failed to assert a Challenge by November 10, 2019, and neither moved for an extension of the Challenge Deadline nor obtained an agreement from Wells Fargo for an extension.

11.    The Second Amended Cash Collateral Order provided that the Debtors' admissions, including those regarding the seniority of the Prepetition Secured Parties' liens, were binding upon all parties in interest, subject only to a carve out for certain challenges brought by the official committee of unsecured creditors.  *See* Dkt. 1250 ¶ 21.

**III.    The Sale Process**

12.    During the course of these bankruptcy proceedings, the Debtors determined in their business judgment that a sale of all or substantially all of their assets (the "OEA Assets") under Section 363 of the Bankruptcy Code was in the best interest of the bankruptcy estates.  *See* Dkt. 421 ¶ 5.  On September 16, 2019, the Debtors filed a motion for an order approving, among other things, the sale of substantially all the Debtors' assets free and clear of all liens, claims, interests, charges, and encumbrances.  *See* Dkt. 126.  The order establishing bid procedures relating to the sale established the sale objection deadline as December 30, 2019.  *See* Dkt. 317 at 5.

13.    Under the approved sale process, an auction of the OEA Assets was conducted on January 15, 2020, and BCE-Mach III LLC (the "Purchaser") was identified as the successful bidder.  On January 24, 2020, this Court entered the Order Authorizing Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, approving the sale of the OEA Assets to the Purchaser.  *See* Dkt. 1013.  On April 8, 2020, the Court entered the Order Authorizing AMH/AMR Debtors to Enter Into and Perform Under Modified PSA With BCE-Mach III, LLC, authorizing OEA to enter into and perform under a First Amendment to Amended and Restated

Purchase and Sale Agreement with the Purchaser. *See* Dkt. 1512. The sale closed on April 9, 2020.

14. After the finalization of the Section 363 sale, Mustang filed this adversary proceeding, asserting that its Purported Covenant Interests entitle it to a priority interest (over the Administrative Agent) in the proceeds of the sale of the OEA Assets to BCE-Mach III LLC (the "Sale Proceeds"). *See* Complaint ¶ 28.[4] Additionally, Mustang seeks a declaration that its Purported Covenant Interests are real property rights and interests burdening the OEA Assets and Sale Proceeds, along with a determination of the value of its Purported Covenant Interests. *See id.* ¶ 27.

## LEGAL STANDARD

15. A complaint must contain "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

16. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal quotation marks omitted). Admitting the facts alleged in the complaint, a motion to dismiss challenges the plaintiff's right to any relief based on those facts. *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995).

---

[4] This is Mustang's second adversary proceeding asserting an entitlement to Sale Proceeds. Mustang voluntarily dismissed its first adversary proceeding on March 6, 2020, after Wells Fargo filed a motion to dismiss. *In re Alta Mesa Res., Inc.*, Ch. 11 Case No. 19-35133 (MI), Adv. No. 20-03015 (Bankr. S.D. Tex. Jan. 20, 2020). Mustang makes substantially the same allegations here.

**ARGUMENT**

17.     Mustang's claims are facially implausible because they are barred by the binding admissions in the Cash Collateral Orders that Wells Fargo holds first priority liens in the OEA Assets, subject only to certain permitted prior liens that do not include Mustang's Purported Covenant Interests.  Mustang, on notice of the Cash Collateral Orders and the Challenge Deadline, did not dispute the Prepetition Secured Parties' priority within the period allowed by the Court. The claims it now asserts in this adversary proceeding, filed as these cases are nearing conclusion, are barred by the Court's prior orders on which these cases have been proceeding.

18.     Separately, Mustang at no point had an interest in any portion of the OEA Assets securing a monetary claim.  As a matter of law, a party's non-monetary covenant interest— burdening only *land*—does not yield a lien or security interest in the *proceeds* of a sale of that land.  In contrast, Wells Fargo has a security interest in the OEA Assets that attaches to the Sale Proceeds stemming from the sale of those assets.[5]  Accordingly, all of Mustang's claims should be dismissed for failure to state a claim.

**IV.     The Cash Collateral Orders Bar Mustang's Claims**

19.     Mustang's claims for relief are barred by the Cash Collateral Orders, which contain admissions that the Prepetition Secured Parties hold first priority security interests and liens.  The Debtors admitted and stipulated that the Prepetition Loan Parties granted "*senior* security interests in, and continuing, valid, binding, enforceable and perfected *first priority* liens on" the Prepetition Collateral "to and/or for the benefit of the Prepetition Secured Parties . . . . , *subject only to Permitted Prior Liens*," which do not include Mustang's Purported Covenant Interests.  Dkt. 567

---

[5] *See* Supplement to and Amendment of Second Amended and Restated Mortgage, Deed of Trust, Indenture, Security Agreement, Financing Statement and Assignment of Production ("Wells Fargo OEA Mortgage") at §§ 3.1–3.3, attached as Exhibit A.

¶¶ D(i), 3(a) (emphasis added); Dkt. 600 ¶¶ D(i), 3(a) (emphasis added); Dkt. 1250 ¶¶ D(i), 3(a) (emphasis added).  The Cash Collateral Order and Amended Cash Collateral Order stated clearly that this admission was "binding *upon all other parties in interest . . . for all purposes*," unless a party disputed this priority determination before the Challenge Deadline.  Dkt. 567 ¶ 21 (emphasis added); Dkt. 600 ¶ 21 (emphasis added).  The orders left no room for doubt that unless a Challenge was properly filed, "the Debtors' admissions and releases . . . shall be binding on all parties in interest," and "shall not be subject to any other or further challenge by . . . any other party in interest."  Dkt. 567 ¶ 21; Dkt. 600 ¶ 21.

20.     Mustang had appeared in these cases over a month prior to the entry of the Cash Collateral Order, at which time the Debtors made clear their intention to sell their assets free and clear of all liens, claims, interests, and encumbrances.  *See* Dkt. 126 (Debtors' Sale Motion, Sept. 16, 2019); Dkt. 421 (Mustang's Motion for Relief from the Stay, Oct. 28, 2019); Dkt. 567 (Cash Collateral Order, Nov. 21, 2019).  Nonetheless, Mustang did not dispute the priority determination. Mustang failed to bring a Challenge, allowing the Challenge Deadline to pass.  Instead, Mustang filed filing proofs of claim for unsecured claims based on the alleged gas purchase agreements. Now, well after the November 10, 2019 Challenge Deadline and the December 9, 2019 claims bar date, Mustang asserts that its Purported Covenant Interests prime the Prepetition Secured Parties' liens.

21.     These claims fail.  Mustang is bound by the stipulation that the Prepetition Secured Parties' security interests and liens are (a) "senior" and "first priority"; and (b) "subject only to Prepetition Secured Liens."  Dkt. 567 ¶ D(i); Dkt. 600 ¶ D(i); Dkt. 1250 ¶ D(i).  Pursuant to the Cash Collateral Orders, the Prepetition Secured Parties' security interests and liens are senior to, and not subject to, Mustang's Purported Covenant Interests.  Accordingly, Mustang's request for

declaratory judgment that its Purported Covenant Interests enjoy priority over Wells Fargo's interests in the OEA Assets and the Sale Proceeds is barred by the Cash Collateral Orders, is facially implausible, and must be dismissed.  *See* Complaint ¶ 28.

22.     Further, since the value of Wells Fargo's interests exceeds the amount of the Sale Proceeds,[6] Mustang's requests for (i) declaratory judgment that its Purported Covenant Interests are real property rights and interests burdening the OEA Assets and their Sale Proceeds, and (ii) a determination of the value of the Purported Covenant Interests should be dismissed as moot.  *See id.* ¶ 27.  Upon a finding that Wells Fargo's interests prime Mustang's Purported Covenant Interests, the parties would no longer have a "legally cognizable interest in the outcome" of these additional requests for relief, since the Sale Proceeds will have been exhausted once Wells Fargo's interests attach to them.  *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 527 (5th Cir. 2008) (quoting *In re Scruggs*, 392 F.3d 124, 128 (5th Cir. 2004)); *see also id.* ("[I]t is not enough that a dispute was very much alive when the suit was filed; the parties must continue to have a personal stake in the outcome of the lawsuit.") (ellipses and brackets omitted) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)).

---

[6] The Cash Collateral Orders contain stipulations that the Debtors were "justly and lawfully indebted and liable, without defense, counterclaim, or offset of any kind, to the Prepetition Secured Parties in the aggregate principal amount of approximately $340,513,886, plus any accrued interest, fees, letters of credit, and other amounts that may be due and payable thereunder," including all principal and interest owed or outstanding under the AMH Credit Agreement.  Dkt. 567 ¶ C; Dkt. 600 ¶ C; Dkt. 1250 ¶ C.  Further, Wells Fargo has filed proofs of claim against the AMH Debtors, each in the amount of not tell than $357,821,228.  *See, e.g.*, Claim No. 773.  In contrast, the Sale Proceeds totaled only $159,500,000.  *See* Dkt. 1512, Ex. 1 (Amendment to AMH PSA) at § 2(c).

**V.      Mustang's Non-Monetary Purported Covenant Interests Cannot Attach to Section 363 Sale Proceeds**

23.     Mustang's claims fail for the additional, independent reason that Mustang improperly conflates its Purported Covenant Interests with a security interest in the OEA Assets.[7] *See* Complaint ¶¶ 13, 22.  Because Wells Fargo has a monetary claim against the OEA Assets, its pre-petition security interest entitles it to recoup Sale Proceeds.[8]  In contrast, Mustang's Purported Covenant Interests are non-monetary, merely supporting Mustang's gas purchase agreements, and cannot attach to the Sale Proceeds.  *Id.* ¶ 14.

24.     A party's status as a beneficiary of a restrictive covenant in real property does not give rise to a right to an interest in the sale proceeds of that property, like a lien against the real property would.  *See In re Hai Quang La*, 415 S.W.3d 561, 566 (Tex. App.—Fort Worth 2013, pet. denied) ("Restrictive covenants . . . are not liens or claims against real property . . . .").  Rather, a "covenant" and a "lien" are separate and distinct concepts.  *Id.*; *compare Lien*, Black's Law Dictionary (9th ed. 2009) (defining "lien" as "[a] legal right or interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied"), *with Restrictive Covenant*, Black's Law Dictionary (9th ed. 2009) (defining "restrictive covenant" as a "private agreement, usu[ally] in a deed or lease, that restricts the use or occupancy of real property . . . and the uses to which the property may be put").[9]

---

[7] Wells Fargo accepts Mustang's factual allegations as true only for purposes of this Motion.  Wells Fargo does not concede, and reserves the right to dispute, that the Purported Covenant Interests constitute covenants running with the land.

[8] *See* Wells Fargo OEA Mortgage at § 3.1 (granting Wells Fargo a general warranty of title with power of sale "to secure the payment and performance of the Obligations for the benefit of [Wells Fargo]"); *id.* § 3.2 (granting Wells Fargo a Security Interest).

[9] Texas law also provides separate definitions for "lien" and "restrictive covenant."  *See* Tex. Civ. Prac. & Rem. Code § 12.001(3) (defining "lien"); Tex. Prop. Code § 202.001(4) (defining "restrictive covenant").

25.     A lien provides a party with a legal interest against another's property to secure a debt; a restrictive covenant allows a party to "restrict the uses to which the property may be put." *In re Hai Quang La*, 415 S.W.3d at 566 (citations omitted); *see also Beattie v. State ex rel. Grand River Dam Auth.*, 41 P.3d 377, 386 (Okla. 2002) (Opala, J., concurring) ("A covenant is a promise that imposes a burden on the covenantor to act or refrain from acting, and confers a benefit on the covenantee consisting of the right to require the covenantor to act or not act.").  Notably, restrictive covenants *do not* provide for any type of security arrangement "or purport to create a 'lien or claim' on the owner's property."  *In re Hai Quang La*, 415 S.W.3d at 566.  Oklahoma law is consistent with this foundational principle, and has specifically rejected the argument that a negative covenant, by itself, creates a lien on property.  *See Young v. J.A. Young Machine & Supply Co.*, 224 P.2d 971, 973–74 (Okla. 1950); *In re Ludwig Realty Corp.*, 234 B.R. 281, 283–85 (Bankr. W.D.N.Y. 1999) (interpreting Oklahoma law).

26.     Other courts comparing liens and covenants have similarly held that in order to create a security interest, there must be a mortgage or some other express grant of security.  *See, e.g.*, *In re Friese*, 28 B.R. 953, 954 n.4 (Bankr. D. Conn. 1983) (citing "numerous decisions and commentators"); *Hawaii Prod. Credit Ass'n v. Long & Melone, Ltd.*, 923 F.2d 862, at *3–4 (9th Cir. 1991) (noting that a negative covenant to assign profits from property neither creates an interest in the property itself nor provides the covenant holder with a lien on the property).  Absent an express grant of such a security interest, a party's restrictive covenant cannot be converted into a lien or used as an "informal or inchoate security arrangement" between parties.  *In re Friese*, 28 B.R. at 954; *see In re Ludwig Realty Corp.*, 234 B.R. at 285.

27.     Here, Mustang's claimed non-monetary, restrictive gas dedication covenants are not the type of interest in real property that can secure payment of a claimed monetary obligation. Indeed, in its proofs of claim based on alleged breaches of the gas purchase agreements, Mustang conceded that all such claims against the bankruptcy estate were "unsecured."  *See* Claim Nos. 1022, 1037, 1063, 1081.  The Purported Covenant Interests never created a security interest in the OEA Assets, as Mustang never received an "express grant of security."  *In re Friese*, 28 B.R. at 954 (holding that "an agreement not to encumber [does] not create a security interest").  Unlike a lien, "[o]nce a real covenant is breached, it becomes a cause of action," and "'[w]hile a covenant . . . may run with the land, damages arising from broken covenants do not.'"  *In re Badlands Energy, Inc.*, 608 B.R. 854, 876 (Bankr. D. Colo. 2019) (citing *Wallace v. Paulus Bros. Packing Co.*, 231 P.2d 417, 419 (Or. 1951)).  Like claims arising from rejection of an executory contract, a cause of action arising from a breached covenant is simply "an unsecured monetary claim against the bankruptcy estate."  *Id.*

28.     Mustang's Purported Covenant Interests did not create a security interest in the OEA Assets and do not entitle Mustang to recover any portion of the Sale Proceeds.  Mustang's requests for declaratory relief therefore must be dismissed.

**CONCLUSION**

29.    For the foregoing reasons, Wells Fargo respectfully requests that the Court dismiss the claims asserted in Mustang's Complaint against Wells Fargo with prejudice.

Dated:  May 15, 2020

Respectfully Submitted,

BRACEWELL LLP

*/s/ William A. (Trey) Wood III*
William A. (Trey) Wood III
Texas Bar No. 21916050
Trey.Wood@bracewell.com
Jason G. Cohen
Texas Bar No. 24050435
Jason.Cohen@bracewell.com
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile: (713) 221-1212

**COUNSEL FOR WELLS FARGO**
**BANK, N.A.,  AS ADMINISTRATIVE**
**AGENT**

-14-

**<u>CERTIFICATE OF SERVICE</u>**

  The undersigned certifies that on May 15, 2020, a true and correct copy of this document was served by electronic means as listed on the Court's ECF noticing system.


           */s/ William A. (Trey) Wood III*
           William A. (Trey) Wood III