

ENTERED
07/08/2021

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **ALTA MESA RESOURCES, INC.,** *et al*, | § | **CASE NO: 19-35133** |
| Debtors. | § | |
| | § | **CHAPTER 11** |
| | § | |
| **MUSTANG GAS PRODUCTS, LLC,** | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 20-3114** |
| | § | |
| **WELLS FARGO, NATIONAL** | § | |
| **ASSOCIATION,** *et al*, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Alta Mesa sold substantially all of its assets to BCE-Mach III, LLC under § 363 of the Bankruptcy Code.  The asset sale included the assets of Alta Mesa's affiliate, OEA. The net proceeds of the sale are payable to Alta Mesa's secured lenders. Prior to the sale, OEA had contracted to obtain natural gas gathering services from Mustang Gas Products, the plaintiff in this adversary proceeding.  Mustang claims that its unrecorded gas purchase agreements formed covenants running with the land on OEA's oil and gas assets.  Because it believes the gas purchase agreements created real property interests equal or superior to the rights of OEA's secured lenders, Mustang filed this adversary proceeding seeking a declaratory judgment that it is entitled to share in the sale proceeds.  Wells Fargo, the Administrative Agent for the secured lenders, and Tribolet Advisors, the Alta Mesa Plan Administrator, moved for summary judgment.  Because a bona fide purchaser would have been placed on inquiry notice of Mustang's unrecorded interests, such a purchaser would have to conduct a reasonably diligent inquiry into the extent of those interests.

The summary judgment record does not show whether Wells Fargo satisfied its duty of inquiry. For that reason, summary judgment is denied.

## BACKGROUND

Mustang Gas Products, LLC ("Mustang") entered into, or is a successor in interest to, certain gas purchase agreements ("Mustang Agreements") with Oklahoma Energy Acquisitions, LP ("OEA") or its predecessors in interest. (ECF No. 1 at 4). The Mustang Agreements govern the sale, from OEA to Mustang, of natural gas produced in Kingfisher County, Oklahoma. (ECF No. 1 at 4). Each Mustang Agreement includes a dedication which, for summary judgment purposes, is assumed to form a covenant running with the land under Oklahoma law. Mustang never recorded the Mustang Agreements in the public records. Certain other recorded agreements reference the Mustang Agreements. The central issue in this Memorandum Opinion is whether those other recorded agreements are sufficient to put a bona fide purchaser on notice of Mustang's real property interests.

In 2005, ExxonMobil Corp. assigned over four hundred gas purchase agreements to Mustang. (ECF No. 60 at 15). The ExxonMobil Assignment was recorded at Book 2014, Page 1 of the Kingfisher County land records. (ECF No. 60 at 15). The adversary complaint lists thirty-five Mustang Agreements purportedly burdening OEA wells. (ECF No. 60 at 14). Mustang obtained its interest in thirty-two of the Mustang Agreements pursuant to the ExxonMobil Assignment. (ECF No. 60 at 16). The ExxonMobil Assignment states that:

> ExxonMobil 'bargains, sells, assigns, and conveys to' Mustang . . . All contracts affecting the Interests, to the extent each is assignable, including agreements for the sale or purchase of oil, gas, and other hydrocarbons; treating and processing agreements . . . . All easements, permits, licenses, surface and subsurface leases, rights-of-way, servitudes, and other surface and subsurface rights affecting the Interests.

(ECF No. 60-3 at 2). The ExxonMobil Assignment goes on to say that:

> All covenants and agreements in this Assignment . . . bind and inure to the benefit of the heirs, successors, and assigns of ExxonMobil and Assignee [Mustang]; are covenants running with the land; and are effective as stated, whether or not the covenants and agreements are memorialized in assignments and other conveyances executed and delivered by the parties and their respective heirs, successors, and assigns from time to time.

(ECF No. 60-3 at 16).

Additional Mustang Agreements were entered after the ExxonMobil Assignment. (ECF No. 60 at 9, n.11). Mustang entered Contract Nos. 895011, 895022 and 895026 in 2007, 2010, and 2011, respectively. (ECF No. 60-1 at 4). OEA acquired its interest in Contract No. 895011 through an assignment from Hinkle Oil & Gas, Inc. ("Hinkle Assignment"), which was recorded on May 25, 2016 at Book 2887, Page 119. (ECF No. 60-1 at 3-4). OEA acquired its interest in Contract No. 895022 through an assignment from Fuksa Investments, Inc. ("Fuksa Assignment"), which was recorded on January 20, 2017 at Book 2975, Page 179. (ECF No. 60-1 at 4). Mustang appears to have entered Contract No. 895026 with Chaparral Energy, LLC on February 1, 2011. (ECF No. 1 at 10). Brian Tibbs, Mustang's Vice President of Gas Supply states that "Contract No. 895026 is identified through inquiry of the general recitals in assignments from third-parties to OEA or its predecessors in title." (ECF No. 60-1 at 4; *see also* ECF No. 60 at 16 n.11(iii))).

Exhibit B of the recorded Hinkle Assignment expressly states that Mustang Contract No. 895011, "covering the sale of natural gas produced from the Nelson #2-18 well located in the SE/4 of Sec. 18-T18N-R5W, Kingfisher, OK, as amended" is "[a]ttached to and made a part" of the Hinkle Assignment. (ECF No. 60-4 at 28). The Hinkle Assignment does not include a copy of Contract No. 895011, nor does it otherwise summarize any terms of Contract. No. 895011.

Similarly, Exhibit B of the recorded Fuksa Assignment states that Contract No. 895011 is "[a]ttached to and made a part" of the Fuksa Assignment. (ECF No. 60-4 at 45). The Fuksa

Assignment identifies Contract No. 895011 as a "Gas Purchase Agreement" between Fuksa and Mustang, but does not otherwise describe the terms of the contract.  (ECF No. 60-4 at 45).

The Mustang Agreements grant Mustang "rights of ingress and egress and easements allowing it to connect to producing gas wells, set meters, and install pipelines and surface equipment for purchasing gas produced from the lands covered by the [Mustang Agreements]." (ECF No. 60 at 14).

On September 11, 2019, Alta Mesa Holdings, LP ("Alta Mesa"), along with a number of its affiliates, including OEA, filed petitions under chapter 11 of the Bankruptcy Code.  (ECF No. 52 at 3).  Wells Fargo Bank, N.A. ("Wells Fargo") was the Administrative Agent for Alta Mesa's pre-petition secured revolving credit facility.  Alta Mesa and OEA sold substantially all of their assets free and clear, pursuant to § 363 of the Bankruptcy Code.  (ECF No. 52 at 4).  The Court approved the sale to BCE-Mach III, LLC on January 24, 2020.  (ECF No. 52 at 5).  Alta Mesa and BCE-Mach III subsequently modified the terms of the sale and the Court approved the modified purchase and sale agreement on April 8, 2020.  (ECF No. 52 at 5).  The sale closed the following day.

On April 28, 2020, Mustang filed the present adversary complaint.  The adversary complaint asserts that the covenants purportedly formed by the Mustang Agreements entitle Mustang to share in the sale proceeds.  The complaint further seeks a declaration that the Mustang Agreements formed real property covenants, as well as a valuation of any such covenants.  Those issues are not addressed in this Memorandum Opinion.

Following the sale to BCE-Mach III, the Court confirmed the "First Amended Joint Plan of Liquidation of Alta Mesa Resources, Inc."  The plan established a Plan Administrator as the successor-in-interest to OEA.  Tribolet Advisors, LLC ("Tribolet") was named Plan Administrator.

Wells Fargo moved to dismiss the complaint and at a hearing on July 2, 2020, the Court instructed Wells Fargo to refile its motion as a motion for summary judgment.  Wells Fargo filed its motion for summary judgment on July 16, 2020, with Tribolet joining in the motion.  (ECF No. 52).  After the parties briefed the summary judgment motion, Mustang moved for leave to file a sur-reply.  (ECF No. 63).  Mustang amended its motion for leave to file a sur-reply and Wells Fargo objected.  (ECF Nos. 65, 66).  The Court took both Wells Fargo's motion for summary judgment and Mustang's amended sur-reply motion under advisement.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  A determination of "the validity, extent, or priority of liens" is a core matter pursuant to 28 U.S.C. § 157(b)(2)(K).  Venue is proper in this District consistent with 28 U.S.C. §§ 1408 and 1409.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case.  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party.  *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party at all times.  *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014).  Nevertheless, the Court is not

obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Wheat v. Fla Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the [] court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326

(1986).  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

## DISCUSSION

Mustang seeks a declaratory judgment that its unrecorded gas purchase agreements formed covenants running with the land, entitling Mustang to payment of the § 363 sale proceeds ahead of OEA's secured lenders.  Nothing in the land records of Kingfisher County would provide a bona fide purchaser with actual notice of the content of the Mustang Agreements.  However, references in the land records would place a bona fide purchaser on inquiry notice of the Mustang Agreements.  Because the record does not show whether Wells Fargo undertook a reasonably diligent inquiry, Tribolet and Wells Fargo are not entitled to summary judgment.

Under the Bankruptcy Code, a debtor-in-possession is given the status of "a bona fide purchaser of real property," who has a perfected security interest in such property as of the petition date.  11 U.S.C. § 544(a)(3); *see also* 11 U.S.C. § 1107(a).  As a result, § 544 "gives the debtor-in-possession strong arm powers to avoid certain unrecorded instruments." *In re Goodrich Petroleum Corp.*, 554 B.R. 817, 822 (S.D. Tex. 2016).  A debtor-in-possession may avoid a transfer or obligation of the debtor "that is not perfected and accordingly not enforceable against a bona fide purchaser or lien creditor at the time the bankruptcy petition is filed." *Id.*  A debtor-

in-possession's actual knowledge of a transfer is irrelevant under § 544.  *In re Anloc, LLC*, 487 B.R. 825, 835 (S.D. Tex. 2013).

State law determines the meaning of a bona fide purchaser.  *In re Goodrich Petroleum Corp.*, 894 F.3d 192, 198 (5th Cir. 2018); *In re Hamilton*, 125 F.3d 292, 298 (5th Cir. 1997). Oklahoma law governs OEA's real property located within that state.  In Oklahoma, a bona fide purchaser is one who acquires title to an interest in land for valuable consideration, in good faith, and without actual or constructive notice of outstanding rights of others.  *Big Four Petroleum Co. v. Quirk*, 755 P.2d 632, 634 (Okla. 1988).

"The rule is well established in Oklahoma that in the transfer of real estate in the absence of actual or constructive notice of a previous conveyance or of matters which would put a purchaser on inquiry, a bona fide purchaser for value will take good title to the property."  *In re Harrison*, 503 B.R. 835, 842 (Bankr. N.D. Okla. 2013).  Recording an instrument conveying an interest in real property gives constructive notice to subsequent purchasers.  16 Okla. Stat. Ann. § 16; *Knowles v. Freeman*, 649 P.2d 532, 534 (Okla. 1982).  Unrecorded instruments are "invalid as to subsequent purchasers in good faith, for value and without notice."  *Davis v. Lewis*, 100 P.2d 994, 997 (Okla. 1940).  Additionally, Oklahoma law states that "[e]very conveyance of real property . . . recorded as prescribed by law from the time it is filed . . . is constructive notice of the contents thereof to subsequent purchasers, mortgagees, encumbrancers or creditors."  16 Okla. Stat. Ann. § 16.

Constructive notice hinges on whether a "'prudent purchaser' would have *discovered* [the] interests."  *In re Arzate*, 611 B.R. 446, 455 (Bankr. W.D. Okla. 2019) (emphasis added).  "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have

constructive notice of the fact itself."  25 Okla. Stat. Ann. § 13; *see also In re Arzate*, 611 B.R. at

455-56.  Likewise, a court must undertake a fact specific inquiry to determine if "[s]uch inquiry

may properly lead the party on notice to documents outside the property records."  *In re*

*Cornerstone E&P Co.*, 436 B.R. 830, 852 (Bankr. N.D. Tex. 2010).[1]  Language in a recorded

instrument stating that property is "subject to contract," gives a purchaser a duty of inquiry notice

of an outstanding interest.  *Creek Land & Imp. Co. v. Davis*, 115 P. 468, 470-71 (Okla. 1911) ("A

person purchasing an interest in land 'takes with constructive notice of whatever appears in the

conveyance constituting his chain of title.'  If anything appears in such conveyances 'sufficient to

put a prudent man on inquiry, which, if prosecuted with ordinary diligence, would lead to actual

notice of some right or title in conflict with that he is about to purchase, it is his duty to make the

inquiry, and, if he does not make it, he is guilty of bad faith or negligence,' and the law will charge

him with the actual notice he would have received if he had made it.").  Accordingly, such a

purchaser is charged with inquiring as to the terms of the referenced contract.  *Id.*

    a.  *The Defendants Have Standing to Raise a § 544 Defense*

Mustang argues that Wells Fargo and Tribolet lack standing "to prosecute" avoidance

claims against Mustang because standing belongs solely to "either (i) the "AMH Litigation Trust,

or (ii) BCE-Mach III, LLC."  (ECF No. 60 at 7).  Mustang claims that the purchase and sale

---

[1] Mustang's Response includes the quote ""[i]f, in any deed through which a purchaser's title is adduced there is a recital or reference to another deed or instrument collateral to the chain of title in which his purchase (or not a part of the direct series), he would, by means of such recital or reference, have notice of this collateral instrument, or its contents, and all the facts indicated, by which it might be ascertained, *through inquiry prosecuted with reasonable diligence*, and such notice extends to all deeds and other instruments falling properly within the preceding rules, whether recorded or unrecorded,"  which Mustang attributes to *In re Cornerstone*.  (*See* ECF No. 60 at 24-25). *Cornerstone* is a Texas case, but it is decided under Oklahoma law.  However, *Cornerstone* includes no such quotation. The Court's research suggests that the quoted language may come from *Tuggle v. Cooke*, 277 S.W.2d 729, 731 (Tex. Civ. App.—Fort Worth 1955), a Texas case applying Texas law.  Because the extent of "inquiry" notice will depend on Oklahoma law, the Court will rely on cases applying Oklahoma rather than Texas law.

agreement ("PSA") between Alta Mesa and BCE-Mach III or the Confirmation Order transferred Tribolet's right to assert avoidance actions.

Courts widely hold that a trustee or debtor-in-possession may assert § 544 defensively. *See*, *e.g.*, *In re Alexander*, 524 B.R. 82, 93 (E.D. Va. 2014). "A trustee employs her offensive powers when she initiates avoidance actions to recover property. In contrast, a trustee uses her status defensively when she uses her status as a response or shield to a creditor's proof of claim." *In re Miller*, 2019 WL 3483165, at *3 (Bankr. N.D. Ga. July 30, 2019).

Article V.K.2 of the confirmed plan transferred certain OEA causes of action to the AMH Litigation Trust. BCE-Mach III potentially acquired other causes of action pursuant to the PSA. Such causes of action belong to BCE-Mach III, and did not transfer to the AMH Litigation Trust. Because of those terms of the plan and purchase and sale agreement, Mustang argues that only the AMH Litigation Trust or BCE-Mach III could have standing to assert avoidance claims. (*See* ECF No. 60 at 8).

Contrary to Mustang's contentions, the Confirmation Order expressly states that:

> [U]nless otherwise released under the Plan, the AMH Debtors, or the AMH Plan Administration Trust after the Effective Date, shall maintain all of their rights to Claims or Causes of Action against or related to all Persons and Entities who assert that the AMH Debtors or the AMH Plan Administration Trust owe money to them (excepting amounts owed to the AMH Debtors on account of AMH Litigation Trust Causes of Action).

(Case No. 19-35133; ECF No. 1777 at 38). Mustang asserts that its purported real covenants entitle it to rights in the sale proceeds. The Confirmation Order permits the Plan Administrator to maintain and assert § 544 defenses to payment.

Moreover, Mustang's argument that the avoidance defense was sold to the purchaser is unpersuasive. BCE-Mach III, the purchaser, has no interest in the allocation of the sale proceeds. Instead, under the PSA, BCE-Mach III purchased chapter 5 avoidance actions "relating to the

Assets, Assigned Contracts, and Assumed Obligations."  (Case No. 19-35133; ECF No. 930 at 14).   The Mustang Agreements were neither Assigned Contracts nor Assumed Obligations. Further, Mustang's purported entitlement to share in the sale proceeds only arises because Mustang's interests in the assets were extinguished.

The Plan Administrator's § 544 defense likewise did not transfer to the AMH Litigation Trust.  The Confirmation Order provides that the AMH Plan Administration Trust retains causes of action necessary to defend against claims against the Alta Mesa estates.  (Case No. 19-35133; ECF No. 1777 at 38).   Additionally, the beneficiaries of the AMH Litigation Trust have no right to the sale proceeds.  (ECF No. 19-35133; ECF No. 1757 at 27-28).   Neither the AMH Litigation Trust nor BCE-Mach III has any interest in distribution of the sale proceeds.  Transfer of the § 544 defense to those entities would frustrate the Plan Administrator's duties under the plan and Confirmation Order.  The Confirmation Order and PSA make clear that the Plan Administrator retained standing to assert a § 544 defense against Mustang's claims.

b. *The Recorded Assignments Provide Inquiry Notice of the Mustang Agreements*

Oklahoma law imbues subsequent purchasers with constructive notice of the contents of recorded instruments.   In Mustang's eyes, because the ExxonMobil Assignment contains references to the Mustang Agreements, a subsequent purchaser has constructive notice of the content of the Mustang Agreements.  (*See* ECF No. 60 at 23 (Mustang Response arguing "[i]f the content of a duly recorded instrument imputes to a third party constructive notice of an unrecorded contract or conveyance, that unrecorded contract or conveyance is valid against said third party")). Mustang's view expands constructive notice farther than Oklahoma law reasonably allows. However, the references to the Mustang Agreements do place a third party on inquiry notice.  Wells Fargo has not shown whether it satisfied its duty of inquiry.

A reference to other agreements, in this case the Mustang Agreements, gives subsequent purchasers constructive notice of the existence of those agreements. The content of the ExxonMobil Assignment only includes general information about the Mustang Agreements. That content does not include details regarding the substance of the Mustang Agreements. A bona fide purchaser does not gain constructive notice of the content of the Mustang Agreements from the content of the ExxonMobil Assignment. The same is true for the Mustang Agreements referenced by other recorded assignments.

Instead, a bona fide purchaser gains constructive notice of the existence of the Mustang Agreements. A bona fide purchaser would know that the Mustang Agreements exist, but the terms of the Mustang Agreements (including whether the Agreements formed real property covenants) are not apparent from the ExxonMobil Assignment or the other assignments. That constructive knowledge of the Mustang Agreements places the bona fide purchaser on inquiry notice. As the Supreme Court of Oklahoma has explained, "[o]ne who purchases land with knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of the rights claimed adversely to his vendor, is guilty of bad faith if he neglects to make such inquiry, and is chargeable with the 'actual notice' he would have received." *Cooper v. Flesner*, 103 P. 1016 (Okla. 1909). A bona fide purchaser then has the "duty of ascertaining the terms of the unrecorded contract[s]." *Creek Land & Imp. Co.*, 115 P. at 468.

Ordinary diligence often requires a purchaser to reach out to identifiable parties in an effort to discover potentially adverse interests. In *Tenneco Oil Co. v. Humble Oil & Refining Co.*, Humble and Tenneco each executed an oil and gas lease with the same lessor, covering the same property. 449 P.2d 264, 265 (Okla. 1969). Humble leased the property first, but failed to record its interest until after the lessor executed a second lease with Tenneco. *Id.* Humble brought suit

to quit title, arguing that Tenneco had inquiry notice of the Humble lease and failed to make a diligent inquiry. *Id.* While Tenneco was "informed of the existence of the assignment of an oil and gas leases on record," Tenneco limited its inquiry "to telephoning the president of [its] proposed lessor and inquiring if there was any outstanding lease on the subject property." *Id.* The trial court found that a reasonably prudent purchaser would have inquired with Humble directly, instead of relying upon the lessor's representation. *Id.* at 266. The Supreme Court of Oklahoma affirmed.

Mustang has not shown that a diligent purchaser could ascertain the terms of the Mustang Agreements based solely on the land records. As Mustang concedes, the Mustang Agreements were not recorded. However, Wells Fargo and Tribolet have not submitted evidence that they undertook sufficient diligence to satisfy the duty of inquiry. Wells Fargo has not shown that it made diligent inquiry about the Mustang Agreements. Assuming that the Mustang Agreements formed real property covenants,[2] the Court cannot say, based upon the summary judgment record, whether Wells Fargo conducted a diligent inquiry. Because the Mustang Agreements were not recorded, a bona fide purchaser charged with inquiry notice of the Mustang Agreements would

---

[2] Gas gathering agreements do not invariably create real property covenants. *Compare In re Chesapeake Energy Corp.*, 622 B.R. 274, 283 (Bankr. S.D. Tex. 2020) ("Only after gas is produced and becomes personal property does an obligation regarding the disposition of that gas arise. Without more, the chosen words do not create a covenant that touches and concerns Chesapeake's land.") *with In re Alta Mesa Resources, Inc.*, 613 B.R. 90, 103 (Bankr. S.D. Tex. 2019) ("By dedicating nearly all of its production to Kingfisher, Alta Mesa also burdened its interests under the oil and gas leases by restricting its right to seek a different gatherer or build its own gathering system."). Although the parties agree for summary judgment purposes that the Mustang Agreements formed real property covenants, the Court makes no findings at this time as to whether the Mustang Agreements run with the land.

While Mustang summarily states that "[p]ursuant to the natural gas midstream industry custom and practice, the Mustang [Agreements] themselves were not filed of record in the Kingfisher County land records," the record in Alta Mesa's own bankruptcy case explicitly undercuts Mustang's view of industry custom and practice. (ECF No. 60 at 15). In reviewing certain gathering agreements with Alta Mesa, in an earlier adversary proceeding the Court noted that "Section 3.4 declares that the agreements are 'covenants running with the land,' and requires the parties to record the agreements." *In re Alta Mesa*, 613 B.R. at 96.

have to have made a diligent inquiry to determine what, if any, interests the Mustang Agreements conveyed.

### c. *Mustang's Fixtures Provide Only Inquiry Notice of the Mustang Agreements*

The open presence of Mustang's gathering system on OEA's property also provides a bona fide purchaser with no more than inquiry notice of the Mustang Agreements' contents. Mustang argues that a bona fide purchaser would have constructive notice of Mustang's interests because Mustang has "open and actual possession of lands in which OEA obtained its interests." (ECF No. 60 at 27). The open presence of Mustang's gathering system might place a bona fide purchaser on inquiry notice, but Mustang's possession does not charge a bona fide purchaser with constructive notice. However, as previously explained, Wells Fargo has not shown whether it conducted a reasonably diligent inquiry regarding the extent of Mustang's interests.

A party is "charged with a duty to inquire of any party in possession of the property." *In re Harrison*, 503 B.R. at 843. Thus, "[a] purchaser of realty is charged with notice of whatever rights persons in actual possession may possess." *Wade v. Burkhart*, 167 P.2d 357, 358 (Okla. 1946). "Such an inquiry will reveal if the party in possession has a claim to the property that is adverse or inconsistent with record title. Where such a claim is adverse or inconsistent with record title, a bona fide purchaser is charged with constructive notice of this fact, *triggering a duty to make additional inquiries* regarding title to the property." *In re Harrison*, 503 B.R. at 843 (emphasis added).

For the purpose of summary judgment, the Court accepts Mustang's factual contention that on OEA lands covered by the Mustang Agreements, Mustang had "visible surface equipment and signage used in the delivery, transportation and processing of gas." (ECF No. 60 at 28). That

surface equipment was used to facilitate the movement of gas from OEA's real property to one of Mustang's five cryogenic gas facilities in Kingfisher County.  (ECF No. 60 at 28).

Mustang's physical equipment could put a bona fide purchaser on notice that Mustang possessed portions of the property.  A bona fide purchaser could see that Mustang has gas gathering equipment and pipelines on the property.  While knowledge of the existence of a gathering system is not the same as knowledge of the terms of Mustang's gas gathering agreements, a reasonably diligent purchaser would attempt to learn the terms of those agreements.  As previously explained, the summary judgment record does not show whether Wells Fargo diligently inquired about the Mustang Agreements.

### d.   The Amended Sur-Reply Motion is Denied

After the parties briefed the motion for summary judgment, Mustang filed a motion seeking leave to file a sur-reply.  (ECF No. 63).  Mustang subsequently amended the sur-reply motion to include a copy of its proposed sur-reply.  (ECF No. 65).  Wells Fargo and Tribolet objected to Mustang's amended sur-reply motion.  Consideration of the amended sur-reply motion is denied.

Mustang's motion seeks leave to file a sur-reply because "[t]he substance of Defendants' Reply exceeded by nearly 50% the length [of] the substance of their original [summary judgment motion] . . . . raising arguments and factual assertions not stated in the [summary judgment motion]."  (ECF No. 65 at 1).  A review of the briefing demonstrates that Mustang's concerns do not warrant consideration of its proposed sur-reply.

Consideration of a sur-reply is only appropriate when the movant's reply raises new legal theories or presents new evidence.  *Makhlouf v. Tailored Brands, Inc.*, 2017 WL 1092311, at *5 (S.D. Tex. Mar. 23, 2017).  As the District Court for the Southern District of Texas has explained, sur-replies are "highly disfavored, as they usually are a strategic effort by the nonmovant to have

the last word on a matter." *Weaver v. Celebration Station Props., Inc.*, 2015 WL 1932030, at *3 (S.D. Tex. Apr. 28, 2015) (quoting *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001). If the movant's reply is "responsive to arguments raised and evidence relied on . . . in [the] summary judgment response," consideration of a sur-reply is inappropriate. *Lynch v. Union Pac. R.R. Co.*, 2015 WL 6807716, at *1 (N.D. Tex. Nov. 6, 2015).

Mustang's argument that the length of the reply warrants consideration of a sur-reply is unavailing. First, the Court doubts that the length or a reply should ever have a bearing on a decision of this type. Second, even if the Court did consider the length of the reply, Mustang's arguments would fail. The motion for summary judgment totaled seventeen pages, including ten pages of substantive argument. Mustang's response totaled forty-four pages, including about thirty-seven pages of substantive argument. Wells Fargo and Tribolet's reply totaled twenty-six pages, of which nineteen pages contained substantive argument. The reply is roughly half the length of Mustang's response. The combined length of the motion for summary judgment and the reply is nearly identical, in both total pages and substantive pages, to Mustang's response. Mustang was not prejudiced by an exceedingly lengthy reply. Mustang's complaint that the response "exceeded by nearly 50% the length" of the original motion is unpersuasive given the length of Mustang's own response. (*See* ECF No. 65 at 1).

Nor did the scope of the reply go beyond the issues and facts presented in the motion or response. On the contrary, the reply directly addresses the arguments raised in Mustang's response. Mustang opens its response by arguing that the movants lacked standing to assert a § 544 defense. Next, Mustang argues that OEA's chain of title and open possession provides a bona fide purchaser with constructive notice of the Mustang Agreements. Finally, Mustang addresses why the Court's cash collateral order did not prohibit it from asserting that it held real covenants.

The reply addresses those issues point for point.  (*See* ECF No. 62 at 2).  The reply does not contain any novel legal arguments that are unresponsive to the issues raised by Mustang.  Nor does the reply make new factual assertions.  Mustang fails to show why consideration of a sur-reply would be appropriate in this case, and its amended motion is denied.

### CONCLUSION

A separate order will be entered.

SIGNED 07/08/2021

Marvin Isgur
United States Bankruptcy Judge