United States Bankruptcy Court
Southern District of Texas
**ENTERED**
July 25, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 19-35133 |
| ALTA MESA RESOURCES, INC., *et al.*, | § § | CHAPTER 11 |
| | § | |
| Debtors. | § | |
| | § | |
| MUSTANG GAS PRODUCTS, LLC, | § § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 20-3114 |
| | § | |
| WELLS FARGO, NATIONAL ASSOCIATION, *et al.*, | § § | |
| | § | |
| Defendants. | | |

### MEMORANDUM OPINION

Defendants Wells Fargo Bank and Tribolet Advisors move for summary judgment on Plaintiff Mustang Gas Products' claims against them. ECF No. 85. No genuine disputes as to any material facts exist. Summary judgment is granted. Mustang is not entitled to any of the disputed sales proceeds.

### JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## BACKGROUND

This case involves property interests in Oklahoma mineral estates. The relevant entities are Mustang Gas Products, LLC, Oklahoma Energy Acquisitions, Inc. ("OEA"), and Kingfisher Midstream, LLC.

OEA is one of the Alta Mesa Holdings ("AMH") Debtors, which collectively filed for chapter 11 on September 11, 2019. Case No. 19-35133. Wells Fargo Bank, N.A, is the Administrative Agent under the AMH Credit Agreement. Tribolet Advisors LLC is the AMH Plan Administrator. ECF No. 85.

Mustang seeks: (i) a declaration that Mustang's interests under its agreements with OEA are real property rights and interests burdening the OEA assets and their sale proceeds; (ii) a determination of the value of Mustang's interests; (iii) a declaration that Mustang's interests are superior in right to the interests of all Defendants in the OEA assets and their sale proceeds; and (iv) an order that the value of Mustang's interests are to be paid from the OEA asset sale proceeds.

The foundation of the relief sought is that Mustang possesses covenants running with the land burdening OEA's assets and, after those assets were sold, the sale proceeds.

### I.   FACTUAL BACKGROUND

Mustang seeks relief under 27 agreements between itself and OEA. Careful review of those contracts' provisions is essential to the resolution of this case. The factual background of the 27 agreements is set out below. The relevant provisions are discussed in detail below.

#### A.   Mustang's Agreements with OEA

OEA owned mineral interests in Kingfisher County, Oklahoma, and operated producing gas wells. ECF No. 1 at 3.

There were 27 agreements between Mustang and OEA under which Mustang seeks recovery in this lawsuit. Twenty-five of the agreements generally originated in the 1960s. Two agreements were entered into more recently: the Hinkle Agreement in 2007 and the Chaparral Agreement in 2011.

Mustang is the successor owner of a gas processing plant—the Dover-Hennessey Gas Products Plant—built in the 1960s to process the limited gas volumes being produced from vertical wells. ECF Nos. 85 at 18 & 106 at 16. When Mustang acquired the Plant from ExxonMobil Corporation in 2005, it also acquired 25 agreements. ECF No. 106 at 16. Those 25 agreements were executed by Mustang's predecessors between 1961 and 1972. ECF No. 106 at 16. Under those agreements, OEA is the seller and Mustang is the buyer. ECF No. 106-2.

Those 25 agreements, the D-H Plant Agreements, are generally identical. They each state in relevant part:

> NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein, [OEA] agrees to sell to [Mustang] and [Mustang] agrees to purchase all casinghead gas produced from wells now or hereafter located on leases within the Area of Dedication as shown by Exhibit "A," with the exception of casinghead gas produced from wells which may be located on lands and leases of [OEA] which are subject to a prior Agreement, on the following terms: . . .

ECF No. 106-2 at 4, 22, 44, 58, 74, 86, 108, 118, 126 (omitting "with the exception . . ." clause), 144 (omitting clause), 168 (omitting clause), 189 (omitting clause), 209 (omitting clause), 230 (omitting clause), 249, 267, 355 (omitting clause), 373, 386 (omitting clause), 407, 419, 454, 468, 478, & 488 (the 25 D-H Plant Agreements).

Later, Mustang entered into two additional gas purchase agreements.

In 2007, Mustang entered into a gas purchase agreement with Hinkle Oil and Gas, Inc. ECF No. 106-3. OEA became successor to this

agreement. ECF No. 107 at 27. The Hinkle Agreement states in relevant part: "Subject to the terms and conditions of this Agreement, during the term of this Agreement, [OEA] will sell and deliver gas to [Mustang], and [Mustang] will purchase and receive all available gas from [OEA] that is produced from within the unit boundaries set out in Exhibit A." ECF No. 106-3 at 7 (§ 4.1).

In 2011, Mustang entered into a gas purchase agreement with Chaparral Energy, LLC. ECF No. 106-4. OEA became successor to this agreement. ECF No. 107 at 27. The Chaparral Agreement states in relevant part: "Subject to the terms and conditions of this Agreement, during the term of this Agreement, [OEA] will sell and deliver to [Mustang], and [Mustang] will purchase and receive from [OEA] all of the gas produced from the Dedicated Leases." ECF No. 106-4 at 7 (§ 4.1).

Despite their references to "Dedicated Leases," none of the agreements are recorded in the relevant Oklahoma real property records.

### B. OEA's Asset Sale

The Court authorized the sale of all or substantially all of the AMH Debtors' assets, including OEA's assets, on January 24, 2020. Case No. 19-35133, ECF No. 1013. The Court further authorized the AMH Debtors to enter into and perform under a modified purchase and sale agreement with BCE-Mach III. Case No. 19-35133, ECF No. 1512. The sale closed on April 9, 2020. ECF No. 85 at 12.

### C. Kingfisher's Adversary Proceeding and Asset Sale

On December 20, 2019, the Court ruled in *Alta Mesa Holdings, LP, et al. v. Kingfisher Midstream, LLC, et al.* that OEA's dedications of gas to Kingfisher formed covenants running with the land that could not be rejected under § 365 of the Bankruptcy Code. *Alta Mesa Holdings, LP, et al. v. Kingfisher Midstream, LLC, et al. (In re Alta Mesa Res., Inc.)*, 613 B.R. 90, 100 (Bankr. S.D. Tex. 2019).

Kingfisher sold substantially all of its and its subsidiaries' assets in a § 363 sale approved by the Court on January 24, 2020. Case No. 19-35133, ECF Nos. 1016 & 1513 (supplemental sale order).

## II. PROCEDURAL BACKGROUND

### A. First Motion for Summary Judgment

On July 16, 2020, Defendants filed their first motion for summary judgment. ECF No. 52. The Court denied summary judgment because the summary judgment record did not show whether Wells Fargo satisfied its duty of inquiry as a bona fide purchaser. ECF No. 71.

On July 22, 2021, Defendants filed their motion to reconsider the denial. ECF No. 76. The Court denied reconsideration on the basis that fact issues and disputes remain precluding summary judgment. ECF No. 101.

### B. Second Motion for Summary Judgment

On October 8, 2021, while awaiting a ruling on their motion to reconsider, Defendants filed their second motion for summary judgment. ECF No. 85.

Defendants seek summary judgment on five principal grounds.

First, Defendants argue that our ruling in *Kingfisher* dealt with the very same real property rights over which Mustang asserts ownership. ECF No. 85 at 9. As a result, Defendants argue, Mustang's claims fail because Kingfisher owned, and ultimately sold, those rights. ECF No. 85 at 9.

Second, in case the Court disagrees that Kingfisher owned and sold the property right, Defendants argue no portion of the OEA sale proceeds are attributable to the right. ECF No. 85 at 9. Rather, the sale proceeds were reduced by the right because OEA "had to accept the buyer's agreement to assume OEA's obligations and liabilities under the Kingfisher Agreement as a form of non-cash consideration." ECF No. 85 at 9.

Third, Defendants argue Mustang is attempting to put itself ahead of other general unsecured creditors. ECF No. 85 at 9.

Fourth, Defendants argue Mustang is not entitled to a first priority right to recover from the sale proceeds because, at most, it possesses a claim for breach of real covenant, which only gives right to an unsecured damages claim. ECF No. 85 at 10.

Fifth, and most foundational, Defendants argue Mustang's agreements with OEA never created covenants running with the land to begin with. ECF No. 85 at 10.

## LEGAL STANDARD

### I. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact means that evidence is such that a reasonable fact finder "could return a verdict for the nonmoving party." *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). It is the movant's burden to establish that no genuine issue of material fact exists. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (citing *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005)). A party asserting that a fact cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. Fed. R. Civ. P. 56(c)(1). If the movant establishes "the absence of evidence supporting an essential element of the non-movant's case," the burden shifts to the non-movant to establish a genuine dispute

of material fact. *Sossamon*, 560 F.3d at 326 (citing *Condrey*, 429 F.3d at 562).

In ruling on a motion for summary judgment, a court should view the facts and evidence in light most favorable to the non-moving party. *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014). Nevertheless, the court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Env't. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015). The Court need only consider the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. *Aubrey v. Sch. Bd. of Lafayette Par.*, 92 F.3d 316, 318 (5th Cir. 1996). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).

## II. COVENANT RUNNING WITH THE LAND UNDER OKLAHOMA LAW

As we discussed in the *Kingfisher* decision,

> In Oklahoma, "[a] covenant is a promise that imposes a burden on the covenantor to act or refrain from acting, and confers a benefit on the covenantee consisting of the right to require the covenantor to act or not act." *Beattie v. State ex rel. Grand River Dam Auth.*, 41 P.3d 377, 386 (Okla. 2002) (Opala, J., concurring). Real property covenants are those that are so connected to the underlying land that the benefit and burden pass to successors by operation of law. *Id.*

*Kingfisher*, 613 B.R. at 100.

Three elements are required to form a real property covenant that runs with the land: (i) the burden or benefit must touch and concern the land; (ii) privity of estate must be present between "the party claiming

the benefit and the party upon whom the burden rests;" and (iii) the parties forming the covenant must intend for the burden to pass to successors. *Beattie,* 41 P.3d at 387; *Kingfisher*, 613 B.R. at 100. All three elements must be satisfied; if one is missing, there is no covenant running with the land. *Id.* at 99 ("Thus, the agreements [must] meet all three elements necessary to form real property covenants in Oklahoma."). Oklahoma courts do not require any 'magic words' to create a real property covenant. *See generally Local Federal Sav. & Loan Ass'n of Oklahoma City v. Eckroat*, 100 P.2d 261, 262 (Okla. 1940). Instead, they focus on the intent of the covenanting parties. *Id*. ("There is no evidence to indicate that the parties to the lease meant to create a mere personal obligation by the covenant.").

"The Oklahoma Supreme Court has not determined whether oil and gas gathering agreements form real property covenants. However, the Eight[h] Circuit applied Oklahoma law and found that [a gas purchase contract] create[d] an interest in real property." *Kingfisher*, 613 B.R. at 100 (citing *Sw. Pipe Line Co. v. Empire Nat. Gas Co.*, 33 F.2d 248 (8th Cir. 1929)). In *Empire*, although the Eighth Circuit made it clear that the gas purchase contract created at least some binding interest in the land, it did not determine whether that interest was a covenant running with the land. *Empire*, 33 F.2d at 253.

The Eighth Circuit looked to the intent of the parties as a preliminary inquiry, determining

> it [is] of no importance as to whether such right would run with the land and the leasehold, because certain equitable rights were undoubtedly created by the contract which were enforceable *according to the expressed intention* of the parties against the assignee of the leasehold estate, if that assignee had notice of said rights.

*Id.* (emphasis added).

### A. Intent

"[A] covenant runs with the land only if the original covenanting parties intended for it to run." *Beattie,* 41 P.3d at 389. Intent should be determined by looking at the "entire agreement construed as a whole." *Baker v. Conoco Pipeline Co.*, 280 F. Supp. 2d 1285, 1298 (N.D. Okla. 2003). In *Kingfisher*, we discussed four contract provisions that support a finding of intent.

First, provisions stating that an agreement is a covenant running with the land, although not sufficient on their own, "memorialize the parties' intent to bind successors to real covenants." *Kingfisher*, 613 B.R. at 106.

Second, provisions that purport to bind successors support a finding of intent. *Id.* (citing *Baker*, 280 F. Supp. 2d at 1298).

Third, provisions that require the agreement to be recorded support a finding of intent. *Id.* (citing *Baker*, 280 F. Supp. 2d at 1298).

Fourth, provisions requiring the parties to obtain affirmation that a transferee will uphold the party's obligations under the agreements supports a finding of intent. *Id.*

Fifth, not being terminable at will supports a finding of intent to run with the land. *See Occidental Petroleum Corp., et al, v. Sanchez Energy Corp., et al,* 631 B.R. 847, 867 (Bankr. S.D. Tex. 2021) (finding no intent to run with the land where provision allowed producer to pay a default fee instead of drilling, thus preventing midstream party from "hold[ing the producer's] feet to the fire"); *see also In re Chesapeake Energy Corp., et al*, 622 B.R. 274, 282 (finding no intent to run with the land where exclusive remedy for breach—a formulaic monetary payment—was "inherently personal in nature and unrelated to any real property interest").

## DISCUSSION

The following contract provisions demonstrate, on balance, a lack of intent by the original covenanting parties to create a covenant running with the land in any of the 27 agreements at issue. Attached as Exhibit A is a table giving details as to each of the leases. Those details are summarized here.

### I. NO CLAIMS TO BEING COVENANTS RUNNING WITH THE LAND

None of the 27 agreements at issue states an intent that it creates a covenant running with the land.

### II. MOST PROVISIONS BIND SUCCESSORS

None of the 25 D-H Plant Agreements contain provisions that purport to bind successors.

The Hinkle and Chaparral Agreements both contain provisions purporting to bind successors. Those provisions state: "This Agreement and the rights and obligations of either party may be assigned without the consent of the other party. This Agreement and each of its terms shall extend to and bind the parties, their successors and assigns." ECF Nos. 106-3 (Art. XX) & 106-4 (Art. XIX).

### III. NO PROVISIONS REQUIRE RECORDATION

None of the 27 agreements require the agreement to be recorded. The agreements, in fact, were not recorded.

### IV. NO PROVISIONS REQUIRE AFFIRMATION OF TRANSFEREE'S DUTY

None of the 27 agreements require the parties to obtain affirmation that a transferee will uphold the transferor's obligations under the agreements.

### V. FEW AGREEMENTS ARE TERMINABLE AT WILL

The 25 D-H Plant Agreements are not terminable at will. Rather, those agreements each state: "This contract . . . shall remain in full force and effect for so long as casinghead gas as defined herein is being

produced in paying quantities from the lands described in Exhibit 'A,' under the terms of the oil and gas leases covering said lands, or any extensions or renewals thereof." ECF No. 106-2.

The Hinkle and Chaparral Agreements are both terminable at will. Section 2.1 of the Hinkle Agreement states: "Either party may terminate this Agreement at the end of the initial term or any successive month by written notice delivered to the other party at least sixty (60) days prior to the last day of the then current term." ECF No. 106-3. Section 2.1 of the Chaparral Agreement contains substantially the same language. ECF No. 106-4.

When considering the application of these factors to the agreements, the Court analyzes the 25 D-H Plant Agreements separately from the Hinkle and Chaparral Agreements.

The 25 D-H Plant Agreements fail on all but one of the criteria with respect to whether they evince an intent to create covenants running with the land. None of them state such an intent; none of them bind successors; none of them require recording and none were recorded; none of them require a transferee to acknowledge any obligations. The only factor favoring the intent to create a covenant is that the agreements are not terminable at will. Inasmuch as the agreements do not bind successors, this is a minimal factor. After a sale, the original contracting parties would simply have no remaining bi-lateral duties under the contracts. These contracts do not create a covenant running with the land.

With respect to Chaparral and Hinkle, those agreements also fail on four of the five factors evidencing intent. Neither states that it is intended to create a covenant running with the land; neither requires recording and neither were recorded; neither requires a transferee to acknowledge any obligations; and both are terminable at will on short notice. The only factor that favors the intent to create a covenant is the binding nature of the contract on successors and assigns. But that

provision is largely meaningless. The successor and assign, bound by the contract, could then terminate the contract at will on short notice.

## CONCLUSION

Careful review of the 27 agreements at issue reveals no "expressed intention of the parties" to create a covenant running with the land. *See Empire*, 33 F.2d at 253. Mustang did not possess covenants running with the land burdening OEA's sale proceeds. This determination moots all other bases for summary judgment.

A separate order will be entered.

SIGNED 07/25/2024

Marvin Isgur
United States Bankruptcy Judge

# EXHIBIT A

| Contract | ECF No. | 1. Are there provisions in the agreement that state an intent that the agreement creates a covenant running with the land? | 2. Are there provisions in the agreement that purport to bind successors and assigns? | 3. Are there provisions that require recording of the agreement? | 4. Are there provisions requiring the parties to obtain affirmation that a transferee will uphold the party's obligations under the agreements? | 5. Are there provisions making the agreement terminable at will? |
|---|---|---|---|---|---|---|
| 9012CD | 106-2 at 1 | N | N | N | N (§ 19) | N (§ 17) |
| 9028CD | 106-2 at 19 | N | N | N | N (§ 19) | N (§ 17) |
| 9186CD | 106-2 at 41 | N | N | N | N (§ 19) | N (§ 17) |
| 9187CD | 106-2 at 55 | N | N | N | N (§ 19) | N (§ 17) |
| 9283CD | 106-2 at 71 | N | N | N | N (§ 19) | N (§ 17) |
| 9319CD | 106-2 at 83 | N | N | N | N (§ 19) | N (§ 17) |
| 9442CD | 106-2 at 105 | N | N | N | N (§ 19) | N (§ 17) |
| 9637CD | 106-2 at 115 | N | N | N | N (§ 19) | N (§ 17) |
| 9638CD | 106-2 at 125 | N | N | N | N (§ 18) | N (§ 16) |
| 9664CD | 106-2 at 142 | N | N | N | N (§ 18) | N (§ 16) |
| 9667CD | 106-2 at 166 | N | N | N | N (§ 18) | N (§ 16) |
| 9741CD | 106-2 at 187 | N | N | N | N (§ 18) | N (§ 16) |
| 9772CD | 106-2 at 207 | N | N | N | N (§ 18) | N (§ 16) |
| 9774CD | 106-2 at 228 | N | N | N | N (§ 18) | N (§ 16) |
| 9799CD | 106-2 at 246 | N | N | N | N (§ 19) | N (§ 17) |
| 9804CD | 106-2 at 264 | N | N | N | N (§ 19) | N (§ 17) |
| 9834CD | 106-2 at 353 | N | N | N | N (§ 18) | N (§ 16) |
| 9843CD | 106-2 at 370 | N | N | N | N (§ 19) | N (§ 17) |
| 9861CD | 106-2 at 384 | N | N | N | N (§ 18) | N (§ 16) |
| 9887CD | 106-2 at 404 | N | N | N | N (§ 19) | N (§ 17) |
| 9898CD | 106-2 at 416 | N | N | N | N (§ 19) | N (§ 17) |
| 9924CD | 106-2 at 451 | N | N | N | N (§ 19) | N (§ 17) |
| 9929CD | 106-2 at 465 | N | N | N | N (§ 19) | N (§ 17) |
| 9937CD | 106-2 at 475 | N | N | N | N (§ 19) | N (§ 17) |
| 9958CD | 106-2 at 485 | N | N | N | N (§ 19) | N (§ 17) |
| Hinkle | 106-3 at 1 | N | Y (Art. XX) | N | N (Art. XX) | Y (§ 2.1) |
| Chaparral | 106-4 at 1 | N | Y (Art. XIX) | N | N (Art. XIX) | Y (§ 2.1) |